UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE: RUSSELL MOORE AND WANDA MOORE          CASE NO. 11-11850-DWH
                                              CHAPTER 12

OPINION

On consideration before the court is the determination of whether the Chapter 12 plan of reorganization filed by the above captioned debtors, Russell Moore and Wanda Moore, should be confirmed; objections to confirmation having been filed by Regions Bank, ("Regions"); the Chapter 12 Trustee, Harold J. Barkley, Jr., ("Trustee"); and BancorpSouth Bank, ("BancorpSouth"); on proof in open court; and the court, having heard and considered same, hereby finds as follows, to-wit:

I.

The court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (L), and (O).

II.

VALUATION DISPUTES

Concerning the real property and personal property assets that serve as security for the indebtedness owed by the debtors to Regions, there were material disputes as to the values of these assets. The parties presented the following testimony through witnesses who were all qualified as experts:

<u>Debtors</u> - Real property valuation offered through Louis Edward Chandler:

| | | |
|---|---|---|
| 1. | 1538 Highway 15 North, Houston, Mississippi | $300,000.00 |
| 2. | 6.98 acres, located at 203 County Road 39, Houston, Mississippi | $175,000.00 |

<u>Debtors</u> - Equipment valuation presented through Clay H. West:

| | |
|---|---|
| Fair Market Value | $488,300.00 |

<u>Regions Bank</u> - Real property valuation offered through Paul M. Lowe, Jr.:

| | | |
|---|---|---|
| 1. | 1538 Highway 15 North, Houston, Mississippi (average valuation between sales and income approaches) | $690,000.00 |
| 2. | 6.98 acres, located at 203 County Road 39, Houston, Mississippi (average valuation between sales and income approaches) | $225,000.00 |

<u>Regions Bank</u> - Equipment valuation offered through Benny Taylor:

| | |
|---|---|
| Fair Market Value | $745,132.00 |
| Liquidation Value | $572,232.00 |

During the trial testimony, the court learned that the debtors purchased the real property located at 1538 Highway 15 North, Houston, Mississippi, in 2007 for a purchase price of $232,000.00. While the debtors did add a cooling system to the building located on this property for the purposes of potato storage, the court had considerable difficulty reconciling the purchase price with the value assigned to this property by appraiser Paul M. Lowe, Jr., in the sum of $690,000.00.

Following an analysis of all of the appraisals, the court concludes that the following values should be established for the determination of the secured claim held by Regions, to-wit:

2

Real Property:

| | | |
|---|---|---|
| 1. | 1538 Highway 15 North, Houston, Mississippi | $332,000.00 |
| 2. | 6.98 acres located at 203 County Road 39, Houston, Mississippi | 200,000.00 |

Equipment:

Fair Market Value                                                                       <u>616,500.00</u>

Total Value                                                                                   $1,148,500.00

Regions' secured claim must be treated in keeping with § 1225(a)(5) of the Bankruptcy Code which mandates that the total values be paid plus interest at a fair market rate. Since the values adopted by the court exceed the values utilized by the debtors in their proposed Chapter 12 plan, the plan at this time is not confirmable.

### III.

### TRUSTEE COMPENSATION

In a Chapter 12 bankruptcy case, a trustee's compensation for his or her services must be paid in keeping with § 1226(b)(2) and (c) of the Bankruptcy Code, as well as, 28 U.S.C. § 586(e)(1)(B), which read as follows:

**§ 1226(b)(2) and (c):**

(b) Before or at the time of each payment to creditors under the plan, there shall be paid–
. . . .
    (2) if a standing trustee appointed under section 1202 (c) of this title is serving in the case, the percentage fee fixed for such standing trustee under section 1202(d) of this title.
(c) Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan.

3

**28 U.S.C. § 586(e)(1)(B) -**

(e)(1) The Attorney General, after consultation with a United States trustee that has appointed an individual under subsection (b) of this section to serve as standing trustee in cases under chapter 12 or 13 of title 11, shall fix –

. . . .

(B) a percentage fee not to exceed–
    (i) in the case of a debtor who is not a family farmer, ten percent; or
    (ii) in the case of a debtor who is a family farmer, the sum of–
        (I) not to exceed ten percent of the payments made under the plan of such debtor, with respect to payments in an aggregate amount not to exceed $450,000; and
        (II) three percent of payments made under the plan of such debtor, with respect to payments made after the aggregate amount of payments made under the plan exceeds $450,000;

based on such maximum annual compensation and the actual, necessary expenses incurred by such individual as standing trustee.

The Chapter 12 trustee, therefore, is compensated on the basis of a percentage of the payments that he or she distributes to creditors during the administration of the case. Pursuant to 28 U.S.C. § 586(e)(1)(B), the standing trustee receives a percentage fee not to exceed ten percent of the payments made under the plan up to $450,000.00, and three percent of the payments made under the plan in excess of $450,000.00. In this particular case, the debtors have proposed to pay the Chapter 12 trustee his compensation based on all claims paid in the case except the claim of Regions. Not only is the Regions claim the largest claim in amount, it has been the most problematic to administer, primarily because of the surreptitious actions taken by the debtor, Russell Moore, which will be discussed in more detail hereinbelow.

In their plan, the debtors have proposed to "cramdown" the Regions secured claim based on their appraisals of the collateral items which secure this claim. They have proposed to pay the Regions unsecured claim from their unspecified projected disposable income for a period of three

years. Because Russell Moore disregarded a previous order of this court and diverted $450,000.00, which was potentially subject to the Regions lien, to plant and harvest his 2010 crop, this court will not permit the debtors to make direct payments to Regions to avoid going through the Chapter 12 trustee. The lack of trustworthiness displayed by Moore mandates that the trustee supervise his payments. Because all payments must be remitted to the trustee for distribution to both the secured and unsecured creditors, the debtors' plan proposal is not well taken and the debtors will not be permitted to exclude the Regions claim when calculating the payment of the Chapter 12 trustee's compensation.

Considering the circumstances prevailing in this case, the court adopts the reasoning set forth in *In re Finkbine*, 94 B.R. 461 (Bankr. S.D. Ohio 1988), and *Fulkrod v. Savage (In re Fulkrod)*, 973 F.2d 801 (9th Cir. 1992). *See also In re Sutton*, 91 B.R. 194 (Bankr. M.D. Ga. 1988); *In re Logemann*, 88 B.R. 938 (Bankr. S.D. Iowa 1988); *In re Beard*, 134 B.R. 239 (Bankr. S.D. Ohio 1991); and *In re McCann*, 202 B.R. 824 (Bankr. N.D.N.Y. 1996).

IV.

## PERFECT PACK SWEET POTATO PACKING CO., LLC, AND THE ABSENCE OF A LIQUIDATION ANALYSIS

Russell Moore owns a separate corporation which has not filed a bankruptcy case known as Perfect Pack Sweet Potato Packing Co., LLC, ("Perfect Pack"). Perfect Pack could well be described as an "alter ego" of the debtor.

Periodic balance sheets, income statements, and general ledgers for the debtors, Perfect Pack, and a third entity known as Thorn Custom Harvesting, LLC, were introduced into evidence as Debtors' Exhibits 8, 9, and 10. An examination of the Perfect Pack statements reveals that the

net worth of Perfect Pack is a moving target. It was $284,965.80, at the beginning of calendar year 2012, but dipped to $47,371.58, effective September 30, 2012.

As reflected by the general ledger, the debtors engaged in substantial personal spending utilizing Perfect Pack funds. Since Russell Moore owns 100% of the stock of Perfect Pack, the net worth of Perfect Pack and the stock shares themselves impact the disposable income of the debtors which must be distributed to unsecured creditors as required by § 1225(b)(1)(A), (B), and (C) of the Bankruptcy Code, which provide as follows:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan–
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim;
> (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period, or such longer period as the court may approve under section 1222(c), beginning on the date that the first payment is due under the plan will be applied to make payments under the plan; or
> (C) the value of the property to be distributed under the plan in the 3-year period, or such longer period as the court may approve under section 1222(c), beginning on the date that the first distribution is due under the plan is not less than the debtor's projected disposable income for such period.

In addition to its sizeable secured claim, which has been determined hereinabove by the court's valuation determinations, Regions has a substantial unsecured claim. The financial information presented by the debtors to support confirmation is unreliable and inconclusive. Neither Regions, the trustee, nor the court can calculate, with any reasonable degree of certainty, the debtors' projected disposable income which necessarily must be allocated to the payment of unsecured claims. Adding ambiguity to ambiguity, the plan simply provides that the debtors projected disposable income, <u>in an unspecified amount</u>, will be paid to unsecured creditors for a

three year period. In the court's opinion, this vague repayment proposal for this duration is not a "good faith" effort. Therefore, the debtors' plan is not confirmable for this reason.

The court has examined each of the financial statements appearing in Debtors' Exhibits 8, 9, and 10. While the income statements for both Russell S. Moore Farm and Perfect Pack appear to reflect income generated from the planting and harvesting of crops in 2012, none of the balance sheets reflect line items for cash, accounts receivable, or inventory that would be attributable to the crops. Generally accepted accounting principals mandate that an amount should be present in at least one, if not more, of these line items to explain what has happened to the crops or to the proceeds realized from any crop sales. The structure of the debtors' plan, coupled with the quality of the financial records, provide no clarity as to the debtors' ability to meaningfully fund their proposal.

In addition, neither the plan nor the exhibits provide an adequate liquidation analysis as required by § 1225(a)(4) of the Bankruptcy Code, which states as follows:

> (a) Except as provided in subsection (b), the court shall confirm a plan if –
> . . . .
>> (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

The liquidation analysis would be affected directly by the net worth of Perfect Pack, as well as, the value of the debtors' crops. The debtors cannot spend Perfect Pack funds extravagantly, as they obviously have done in the past, because that unreasonably depletes the net worth of Perfect Pack. The debtors also cannot "squirrel" away funds in Perfect Pack bank

accounts and hope that they go unnoticed. The liquidation analysis must also reflect the status and value of the debtors' 2012 crops, which as stated hereinabove, should be disclosed on a balance sheet as either cash from crop sales, accounts receivable due from crop sales, or inventory. Without an adequate, comprehensible liquidation analysis, the debtors' plan is not confirmable.

V.

## RUSSELL MOORE'S ABSENCE OF GOOD FAITH DURING THE ADMINISTRATION OF THIS BANKRUPTCY CASE

Russell Moore has not exhibited good faith as a result of certain actions that he has taken during the administration of this case. The following are three examples:

1. Moore surreptitiously attempted to have his son farm 500 acres of sweet potatoes which obviously should have been farmed by Moore. This caused problems not only for the creditors involved, but also for Moore's son, Chad.

2. Disregarding this court's order, Moore used $410,000.00, which was potentially subject to Regions secured claim, to plant and harvest his 2010 sweet potato crop. While he was ordered to repay this amount to Regions, and has now done so, this flagrant misconduct cannot be ignored by the court.

3. The debtors' record keeping is far from adequate in providing disclosure of what was actually happening. The court perceives this obfuscation to be purposeful. Indeed, the explanations offered to clarify pertinent accounting entries were consistently vague and inconclusive.

For these additional reasons, the court declines to confirm the debtors' plan as proposed.

Having now determined that the Chapter 12 plan, as presented, cannot be confirmed, the court will set a status conference with the attorneys representing the parties to discuss further proceedings.

An order will be entered consistent with this opinion contemporaneously herewith.

ORDERED and ADJUDGED this the 19th day of December, 2012.

DAVID W. HOUSTON, III
UNITED STATES BANKRUPTCY JUDGE